## Atlantic Refining Co. v. Fraternal Order of Eagles, Aerie No. 970

428

*John Barbe Cupp*, for plaintiff.
*Patrick H. Fierro*, for defendant.

GREEVY, J., June 26, 1959.—This is an action in equity instituted by the Atlantic Refining Company, a corporation, plaintiff, against Fraternal Order of Eagles, Aerie No. 970, Glenn C. Wright and Herman Snyder, trustees of the Fraternal Order of Eagles, Aerie No. 970, Edward J. Hamm and Phillip L. Shannon, former trustees of the Fraternal Order of Eagles, Aerie No. 970, and Robert L. Wolfe, defendants, for specific performance of a contract for the sale of real estate. The contract was entered into on March 19, 1958, by the trustees and officers purportedly on behalf of defendant, Fraternal Order of Eagles, Aerie No. 970, wherein defendants agreed to sell to plaintiff certain premises located at the northeast corner of East Third and Basin Streets, Williamsport, for the price or sum of $32,500. The contract provided that final settlement should take place on July 15, 1958. Tender was made on behalf of plaintiff but defendant, Fraternal Order of Eagles, Aerie No. 970, refused to perform alleging that the contract of sale was invalid and unenforceable . . .

### Discussion

On Sunday, March 16, 1958, an advertisement appeared in the Grit that a special Aerie meeting of the Eagles was called by the president for March 19, 1958, at 8 p. m., regarding "business pertaining to the buildings." This advertisement also appeared in the Williamsport Sun on March 17, and again on March

18, 1958. The meeting was held and action taken approving the sale of the premises in question to plaintiff and on the same date the agreement of sale of the premises was executed and delivered to plaintiff.

The question before us is whether that agreement is valid and binding against defendant, Fraternal Order of Eagles, Aerie No. 970.

The Nonprofit Corporation Law of May 5, 1933, P. L. 289, is not applicable as defendant is a fraternal order, to wit, Lodge Aerie System, and as such is not covered by the act: 15 PS §2851—4(2). Defendant, however, comes under the law pertaining to fraternal benefit societies: Fraternal Benefit Societies Act of July 17, 1935, P. L. 1092, 40 PS §1051. The Grand Aerie of the Fraternal Order of Eagles has the power to make, alter and amend its constitution and laws for the government of the organization and such law governs the organization as well as subordinate and constituent lodges and all the members (40 PS §1056), and the court cannot substitute its judgment for the judgment of those who were authorized to adopt the constitution and laws. Section 89.1 of the Statutes of the Grand Aerie of Fraternal Order of Eagles pertaining to Aerie officers, provides that the board of trustees, under the direction of the Aerie, shall hold in trust for the Aerie all real property belonging to the Aerie. Opinion 73, rendered by the grand tribunal, pertaining to this section, states: "Under our Laws, the Trustees are in effect the agents of the Aerie, and their powers and duties, unless otherwise defined and enlarged by the Aerie By-Laws, are at all times subject to the direction and control of the Aerie."

The by-laws of Aerie No. 970 do not otherwise define or enlarge the powers and duties of the trustees. Section 11.1 of the by-laws of Aerie No. 970, provide: "Under the direction of the Aerie, the Trustees shall be the custodians of and hold in trust for lawful pur-

poses of the Order and this Aerie, all real property of the Aerie, in accordance with Section 110.4 Statutes Fraternal Order of Eagles or laws amendatory thereof." The actions of the trustees as to real property are at all times subject to the direction and control of the members. Therefore the contention of plaintiff that the trustees were not even required to give notice to the membership of their action is without merit.

Section 110.4 of the statutes provides, inter alia: "That no real estate . . . may be . . . encumbered by any local Aerie, or by any person or body in trust . . . unless authorized by a vote of the Aerie at a meeting upon such notice to each member as may be required by the laws of the State . . . or if the laws require no notice, then at least five days notice by mail," and unless written approval has been secured from the financial advisor and if this has not been done, then any action shall be invalid and ineffective for any purpose.

Defendant contends that the word encumbrance includes "sale". With this we do not agree. The court, in the case of Jeffrey Structures, Inc., v. Grimaldi, 186 Pa. Superior Ct. 437, 440, sets forth: "It is well established that an encumbrance is the right or interest in the land which may subsist in third persons to the diminution of the value of the land, but consistent with the passing of the fee by the conveyance". This is supported by Opinion No. 30, which sets forth that no written approval is required from the financial advisor for the sale of the Aerie's real property. The trustees had the power to sell the real property here involved and to enter into the agreement of sale, provided they were directed and authorized by the members. Plaintiff claims that that direction and authorization was given at a special meeting held on March 19, 1958.

Section 72.2 of the statutes sets forth: "The Worthy

President may at his discretion call a special meeting of the Aerie at any time. He shall call a special meeting at any time he may be so requested, in writing, by ten members of the Aerie in good standing. At such special meetings no business shall be transacted, except as may be stated in the notice of such call, and at least two-days notice shall be given to the members of such meeting".

The question before us is whether the meeting was properly called and whether or not the action taken at the meeting is valid. A special meeting was held March 11, 1958, at which time a motion was passed to place the two front buildings in the hands of "Bill" Brand, real estate agent, for sale at a price of $35,000.

Another special meeting was held March 14, 1958, the minutes set forth: "Friday, March 14, Adam Earnest, Worthy President, called for a special meeting at which ten members in good standing signed the paper calling for a special meeting. Due to lack of time the following announcements were made: Three times Saturday, March 15, 1958. The Grit Publishing Company said it would appear in paper third month 16th day, 1958. It also was placed in two days issue Williamsport Sun Gazette, Monday and Tuesday, March 17th and 18th, 1958, in a 1 x 2 ad."

The special meeting was held March 19, 1958, and it was at this meeting that a motion was carried to sell premises in question to plaintiff for $32,500. The minutes set forth that: "A motion and order by Brother Frank Hofer and properly seconded by Brother J. W. Acla and a little discussion, motion was put to vote on the two buildings was put to vote. The two buildings front to be sold to the Atlantic Refining Company for their offer of $32,500. This is a new offer. Of 23 present 18 voted for the motion, 5 not voting, including one a member of the Philadelphia Aerie. No dissenting votes and was unanimous to sell buildings as

ordered. Telegrams and letters of Grand Aerie were read with full authority of Aerie to sell at the amount stated. Papers of sale were signed by the President, Secretary, Treasurer, two Trustees and Auditor. No further allowance of business to be transacted, meeting adjourned until March 25, 1958." Notice of this meeting was given by advertisement in the Grit on March 16, 1958, and Williamsport Sun on March 17 and 18, 1958, setting forth:

"EAGLES No. 970
President Earnest Calls for
SPECIAL
AERE (sic) MEETING
Wed. March 19th
at 8 P. M.
Business Pertaining to Buildings
Adam Earnest, president"

There were also three announcements of the meeting over the public address system on March 15, 1958.

The president was authorized to call the meeting but the only business that could be legally transacted was such business as stated in the notice to the members. The question before us is whether the notice that was given was sufficient to authorize the sale of the premises involved. Was this sufficient notice to the members to comply with the requirements of section 72.2 of the statutes? Did it put the members on notice that the business to be transacted at the meeting was the sale of the real property? The grand tribunal has interpreted "notice" as used in section 72.2 of the statutes to mean "proper notice": Opinion 190. It does not, however, define the term. The term "proper", is defined as "That which is essential, suitable, adapted and correct": Bouvier's Law Dictionary.

The purpose of the special meeting was to dispose of the greater part of the assets of defendant, its main building. Certainly the members were entitled to

"proper notice". Notice in the form of a letter or a personal communication individually to the members would not have worked a hardship on defendant. There was a list of all eligible members, there was no great haste to consummate the sale for the contract provided that date of settlement was four months after date of signing and it is noted that the trustees were simultaneously negotiating for the sale of the rear property and as seen by examination of defendants' exhibit no. 2, prior to the sale of the rear property each member received a letter 13 days in advance notifying them of the meeting "to consider sale of rear building for the sum of $11,000". This letter was dated April 29, 1958, calling for the meeting to be held on May 12, 1958, and very specifically stated the purpose of the meeting and the reason for the proposed sale.

What is "proper notice" depends on the facts of each case, the issues raised and the order to be imposed. In lieu of personal communication the notice by advertisement should at least have stated that the purpose of the meeting was to consider the sale of this specific property whereas this specific advertisement notifying the members of the special meeting was vague and ambiguous, stating only "Business pertaining to buildings". This could refer to painting, redecorating, remodeling, repairing, yes, or even renting, mortgaging or the sale of the rear property.

This notice by advertisement and over the public address system does not meet the requirement as set forth in section 72.2 of the statutes. We find that the notice of the meeting of March 19, 1958, was insufficient and not proper and the action taken pertaining to the real estate, here involved, is invalid and ineffective and the agreement of sale not binding upon defendant.

### Conclusions of Law

1. That this court has jurisdiction of the parties and of the subject matter in this litigation.

434

2. That the Nonprofit Corporation Law does not apply to defendant.

3. That the trustees of defendant, under the direction of defendant, hold in trust all real property of the defendant.

4. That Section 110.4 of the Statutes of Fraternal Order of Eagles does not apply to sale of real property.

5. That special meetings of the Aerie may be held at the discretion of the worthy president or upon written request of 10 members.

6. That no business shall be transacted at such meetings except as stated in the call and at least two days notice shall be given to the members.

7. That advertisement in local newspapers and announcements over the public address system is not notice to the members as required by the statutes of the Fraternal Order of Eagles.

8. That the business and action pertaining to the sale of real estate taken at the special meeting held March 19, 1958, was invalid and ineffective and not binding upon the Fraternal Order of Eagles, Aerie No. 970.

9. That the contract of sale entered into on March 19, 1958, between plaintiff and officers of defendant is invalid and unenforceable against defendant.

10. That plaintiff is not entitled to equitable relief.

11. That judgment shall be entered in favor of defendant, the costs to be paid by plaintiff.

*Order*

And now, June 26, 1959, upon consideration of the foregoing case, it is ordered, adjudged and decreed, as follows:

1. That a decree be and hereby is entered in favor of defendants.

2. That the costs be paid by plaintiff.

The prothonotary is directed to enter this decree nisi and to give notice to the parties or their counsel of record of the entry of this decree and if no exceptions are filed within 20 days thereafter, the decree shall be entered as a final decree by the prothonotary as of course.